UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **IFC CREDIT CORPORATION,** ) | |
| an Illinois Corporation, ) | |
| ) | **CASE NO.   07-CV-6627** |
| Plaintiff. ) | |
| ) | |
| v. ) | |
| ) | |
| **MANUFACTURER'S LEASE** ) | |
| **PLANS, INC.** ) | |
| ) | |
| Defendant. ) | |
| ) | |

### RESPONSE OF MANUFACTURER'S LEASE PLANS, INC. TO VERIFIED COMPLAINT OF IFC CREDIT CORPORATION

COMES NOW, MANUFACTURER'S LEASE PLANS, INC. (hereinafter "MLPI") and in response to the complaint of IFC Credit Corporation (hereinafter "IFC"), shows the court the following:

1.

MLPI does not dispute the information set forth in Paragraph 1 of IFC's complaint.

2.

Answering the allegations of Paragraph 2, Defendant admits each and every allegation contained in said Paragraph 2.

3.

Answering the allegations of Paragraph 3, Defendant denies each and every allegation contained in said Paragraph 3 in that the amount in controversy exceeds the jurisdictional limits of the Cook County Circuit Court's Municipal Department and the claims of both

MLPI and IFC do not arise out of the Master Sale and Assignment Agreement as referenced in Paragraph 3.

4.

Answering the allegations of Paragraph 4, Defendant admits each and every allegation contained in said Paragraph 4.

5.

Answering the allegations of Paragraph 5, Defendant denies each and every allegation contained in said Paragraph 5 in that the claims of both MLPI and IFC do not arise out of the Master Sale and Assignment Agreement as referenced in Paragraph 5.

6.

Answering the allegations of Paragraph 6, Defendant admits each and every allegation contained in said Paragraph 6.

7.

Answering the allegations of Paragraph 7, Defendant neither admits nor denies the allegations as the language of the Servicing Agreement speaks for itself.

8.

Answering the allegations of Paragraph 8, Defendant denies the allegations as the language of the Servicing Agreement speaks for itself.

9.

Answering the allegations of Paragraph 9, Defendant neither admits nor denies the allegations as the language of the Servicing Agreement speaks for itself.

10.

Answering the allegations of Paragraph 10, Defendant denies the allegations as the language of the Servicing Agreement speaks for itself.  Furthermore, any obligation of MLPI to pay residual commissions to IFC is subject to the right of offset and general contract principles in two ways.  First of all, residuals from a well performing lessee being applied to the non-performance of another lessee and secondly, offset for damages incurred by MLPI due to IFC's improper misfeasance or nonfeasance.

11.

Answering the allegations of Paragraph 11, Defendant acknowledges that payments were made by lessee Royster Clark and received by MLPI for the months of July, August, September and October.

12.

Answering the allegations of Paragraph 12, Defendant denies each and every allegation contained in said Paragraph 12 as the payments are not due and owing under the Servicing Agreement because of MLPI's right of offset as stated previously in this answer.

13.

Answering the allegations of Paragraph 13, Defendant acknowledges only that demands have been made by IFC for payment.  Defendant denies that payments are due and owing under the Servicing Agreement because of MLPI's right of offset as stated previously in this answer.

14.

Answering the allegations of Paragraph 14, Defendant denies each and every allegation contained in said Paragraph 14 as the payments are not due and owing under the Servicing Agreement because of MLPI's right of offset as stated previously in this answer.

15.

Answering the allegations of Paragraph 15, Defendant acknowledges only that demands have been made by IFC for payment. Defendant denies that payments are due and owing under the Servicing Agreement because of MLPI's right of offset as stated previously in this answer.

16.

Answering the allegations of Paragraph 16, Defendant denies each and every allegation contained in said Paragraph 16.

17.

Answering the allegations of Paragraph 17, Defendant denies each and every allegation contained in said Paragraph 17.

18.

Answering the allegations of Paragraph 18, Defendant denies each and every allegation contained in said Paragraph 18.

19.

Answering the allegations of Paragraph 19, Defendant denies each and every allegation contained in said Paragraph 19.

## AFFIRMATIVE DEFENSES

FURTHER, MLPI asserts the following defenses and states:

20.

IFC's complaint fails to state a claim upon which relief may be granted.

21.

IFC's complaint fails to join a party in whose absence complete relief can not be accorded among those already a party to the action.

22.

To the extent that IFC seeks equitable relief, IFC's inequitable conduct constitutes unclean hands and therefore bars the granting of relief to IFC herein.

23.

IFC breached it's contract with MLPI, and that by reason of said breach of contract, MLPI is excused of their duties to perform all obligations as set forth in said contract.

24.

MLPI alleges that they have suffered damage by reason of IFC's conduct and that they have the right of offset if any amount of money is owed to IFC or due to IFC by way of damages.

25.

The allegations herein, and each and every Cause of Action contained in the complaint, are barred by reason of acts, omissions, representations and courses of conduct by IFC, on which MLPI was led to rely to their detriment, thereby barring, under the doctrine of equitable estoppel, any causes of action asserted by IFC.

26.

IFC was engaged in conduct that constitutes a waiver of their rights under the contract alleged in the complaint. By reason of said waiver, MLPI is excused from further performance of the obligations under the alleged contract.

27.

IFC has failed to mitigate and lessen damages, if any were sustained, as required by law, and IFC is barred from recovery against MLPI by reason thereof.

28.

If there presently exists or ever existed, any or all of the alleged rights, claims or obligations which IFC seeks by way of their complaint, said claims or obligations are unenforceable because the referenced written agreement is not fully integrated.

29.

Performance of certain acts by IFC was a condition precedent to any alleged obligation by MLPI to perform any other acts under the contract and IFC failed to meet such conditions precedent.

30.

IFC's complaint, on its face, indicates claims in excess of the jurisdictional limits of this Court.

31.

IFC's Breach of Fiduciary Duty absolves MLPI of any liability.

WHEREFORE, MLPI prays that the relief requested by IFC is denied, that IFC take nothing by its Complaint and that MLPI have judgment against IFC to recover costs of suit herein incurred, and for such other relief as the court may deem just and proper.

                Respectfully Submitted,

                MANUFACTURER'S LEASE PLANS, INC.

                By:_/s/_____
                      One of its Attorneys

Patricia E. Rademacher
Maysoun B. Iqal, 005855
Coston & Rademacher
105 W. Adams, Suite 1400
Chicago, IL 60603
Phone: 312-205-1010

## COUNTERCLAIM

### COUNT ONE
### BREACH OF FIDUCIARY DUTY

1. MLPI is an equipment leasing company, in the business of leasing tangible goods to its customers. In the ordinary course and conduct of its business, MLPI purchases equipment and leases from other leasing companies.

2. In December 2004, MLPI entered into a Servicing and Residual Agreement (IFC's Exhibit B) whereby MLPI engaged IFC as its fiduciary agent to provide certain services in connection with certain equipment leases that MLPI had purchased from IFC.

3. At the time the Servicing and Residual Agreement went into effect, the leases were owned by MLPI and the lessees were customers of MLPI.

4. Under the Servicing and Residual Agreement, IFC was engaged as a fiduciary agent of MLPI to invoice and collect monthly rentals owed MLPI by the designated MLPI customers. IFC was required to strictly and punctually account for those rents to MLPI. IFC's fiduciary duties also included representing the interests of MLPI in end-of-lease negotiations with those customers regarding their end-of-lease alternatives and ultimate disposition of the leased equipment.

5. The leases being administered by IFC as MLPI's agent also included two (2) leases of office furniture owned by MLPI and leased to Centrix Financial LLC. Centrix was in the business of originating sub-prime auto loans, which it would then bundle into portfolios and sell to third-party investors, usually credit unions. Centrix also serviced the loans that it sold.

6. In late 2005, applicable government regulations were modified in a way which prohibited credit unions from continuing to purchase contracts such as those sold by Centrix, thus effectively forcing Centrix to discontinue the most profitable aspect of its operations. On information and belief, IFC learned of this development in late 2005 but did not share this information with MLPI until several months later.

7. IFC also had other lease contracts with Centrix which also went into default at this time.

8. In January 2006, Centrix went into default as to the leases owned by MLPI. Around February 1, 2006, this default was cured.

9. Centrix made its March rental payment, but it defaulted in other monetary obligations that were due in March. In April, Centrix ceased making rental payments. IFC did not declare the Centrix leases to be in default, nor did it notify MLPI of the default or the fact that Centrix' financial circumstances were in jeopardy.

10. IFC did not inform MLPI of these circumstances until late May 2006. By the time MLPI was able to assemble pertinent information and develop a plan of action, Centrix had already indicated to major creditors that it had developed a plan which would include closure of its auto loan business and the sale of its loan servicing business, and that these plans would likely include the initiation of a Chapter 11 bankruptcy proceeding, thus forestalling the ability of MLPI to implement its own plan of action.

11. IFC did act against Centrix in September 2006 by the initiation of involuntary bankruptcy proceedings, which Centrix promptly converted into a voluntary Chapter 11 proceeding.

12. Had IFC promptly informed MLPI of the unfolding situation in January 2006, when Centrix first went into default, MLPI could have formulated and implemented a plan of action which would likely have mitigated the loss of rental income MLPI incurred in 2006.

13. Per its Chapter 11 plan, Centrix did resume payments on the MLPI owned leases in January 2007, when Centrix made a payment in an amount sufficient to cover the January 2007 rent, December 2006 rent and a portion of the November 2006 rent. No other payment reducing the unpaid 2006 balance was made or is anticipated.

14. In November 2006, MLPI notified IFC that IFC was in breach of the Servicing and Residual Agreement and that it was in violation of its fiduciary duties to MLPI. At that time, MLPI also terminated the Servicing and Residual Agreement, terminating all aspects of IFC's agency and all associated powers and authority.

15. As a result of IFC's failure to perform its fiduciary duties to MLPI, MLPI suffered damages as a result of lost rental income and associated charges in the amount of $107,033.00.

**WHEREFORE**, Counter-Plaintiff, MANUFACTURER'S LEASE PLANS, INC., prays for entry of an order in favor of Counter-Plaintiff and against Counter-Defendant, IFC CREDIT CORPORATION, in at least the sum of $107,033.00, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

## COUNT TWO
## INTERFERENCE WITH BUSINESS RELATIONS

16. Counter-Plaintiff repeats, realleges and incorporates herein by reference each of the allegations contained in the foregoing paragraphs 1 through 9 of this Counterclaim, inclusive, as if fully set forth herein.

17. Beginning in 2007, IFC initiated a pattern of action calculated to interfere with MLPI's contractual relationships with its customers and to undermine MLPI's valuable business relationships with those customers. Specifically, IFC began systematically contacting certain of MLPI's customers, invoicing those customers for rents owed to MLPI upon the equipment they were leasing from MLPI and informing those customers that such rents should be paid to IFC.

18. Prior to the matters complained of by MLPI, an entity by the name of Vision Financial Corporation (VFC) entered into several equipment leasing contracts with Royster Clark, LLC, pursuant to which VFC purchased certain goods and leased those goods to Royster Clark.

19. Also prior to the acts complained of by MLPI, VFC transferred its interest in certain of Royster Clark's equipment leases and the underlying equipment to IFC.

20. In December 2004, IFC sold and assigned to MLPI twelve (12) equipment lease contracts with Royster Clark that had been originated by VFC, together with the equipment underlying those leases, thereby creating a contractual

relationship between MLPI and Royster Clark. IFC purported to have and convey good marketable title to the equipment and the equipment leases, free of all liens and claims.

21. IFC believed that the residual value of the equipment on lease to Royster Clark was significantly greater than the aggregate sum of the remaining rentals owed by Royster Clark plus the end-of-lease purchase options held by them. IFC therefore expected to benefit if the purchase option could be nullified.

22. In approximately March 2006, Royster Clark was acquired by and merged into Agrium, a multi-billion dollar manufacturer and producer of agri-business products. In approximately October 2006, IFC learned of this and determined that it would to IFC's financial benefit to declare Royster Clark to be in default of all twelve (12) of the lease contracts owned by MLPI and to have the end-of-lease options voided by reason of these claimed defaults. IFC, acting without knowledge, consent, or authority of MLPI, used the Royster-Clark/Agrium merger as a pretext for declaring Royster Clark to be in breach of all twelve (12) of the lease contracts owned by MLPI.

23. The merger did not put Royster Clark in default. In fact, throughout the approximately seven (7) months intervening between the Royster Clark/Agrium merger in March 2006, and the actions by IFC in October 2006, Royster Clark was consistently punctual in the payment of its monthly rent and was not in any way in breach or default of its contractual obligations under the leases owned by MLPI.

24. The actions of IFC were without consent or authorization by MLPI and were contrary to MLPI's business standards and practices and contrary to MLPI's business and financial interests.

25. IFC knew of MLPI's relationship with Royster Clark, yet the actions taken by IFC were intentional and were undertaken for its separate benefit, and thus constituted wrongful interference with MLPI's contracts and MLPI's valuable business relationship with Royster Clark. As a result of these actions, MLPI suffered damage.

26. By reason of IFC's wrongful action, the "faithless servant" doctrine entitles

        MLPI to have any claim that IFC might otherwise have for commissions or other compensation in connection with the Royster Clark leases that were declared to be in default.

27.      Alternatively, MLPI is entitled to damages equal in amount to the approximately $135,000.00 to which IFC claims it will ultimately be entitled in residual commissions from the Royster Clark leases.

**WHEREFORE**, Counter-Plaintiff, MANUFACTURER'S LEASE PLANS, INC., prays for entry of an order in favor of Counter-Plaintiff and against Counter-Defendant, IFC CREDIT CORPORATION, in at least the sum of $135,000.00, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

### COUNT THREE
### BREACH OF CONTRACT

28.      Counter-Plaintiff repeats, realleges and incorporates herein by reference each of the allegations contained in the foregoing paragraphs 1 through 27 of this Counterclaim, inclusive, as if fully set forth herein.

29.      Prior to MLPI's termination of IFC's agency, IFC had a duty to perform under its Agreement with MLPI.

30.      Prior to MLPI's termination of IFC's agency, IFC's duty to perform was not discharged.

31.      As a result of IFC's failure to perform under the terms of the Agreement, IFC is in breach of its obligation to MLPI.

32.      MLPI has suffered damages due to the breach in the amount of $129,348.94.

**WHEREFORE**, Counter-Plaintiff, MANUFACTURER'S LEASE PLANS, INC., prays for entry of an order in favor of Counter-Plaintiff and against Counter-Defendant, IFC CREDIT CORPORATION, in at least the sum of $129,348.94, plus costs, interest and attorneys' fees; and for such further legal and equitable relief as this Honorable Court may deem just and appropriate.

Respectfully Submitted,

MANUFACTURER'S LEASE PLANS, INC.

By:_/s/_____
    One of its Attorneys

Patricia E. Rademacher
Maysoun B. Iqal, 005855
Coston & Rademacher
105 W. Adams, Suite 1400
Chicago, IL 60603
Phone: 312-205-1010

## **CERTIFICATE OF SERVICE**

   I, Maysoun B. Iqal, an attorney, certify that I served a copy of this Certificate of Service and attached Response and Counterclaim via First Class mail and electronic delivery via the ECF system to: Beth Anne Alcantar, IFC Credit Corporation, 8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053, by causing said documents to be placed into a properly addressed envelope and depositing the same in the U.S. Mail depository at 105 W. Adams, Chicago, Illinois 60603, with proper postage prepaid, at or before 5:00 p.m. on December 6, 2007.

                 __/s/_____
                 Maysoun B. Iqal, 005855

Patricia E. Rademacher
Maysoun B. Iqal
COSTON & RADEMACHER
105 W. Adams, Suite 1400
Chicago, IL 60603
Telephone: (312) 205-1005