## UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IFC CREDIT CORPORATION,<br>an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No.  07-CV-6627 |
| v. | ) ) | |
| MANUFACTURER'S LEASE PLANS, INC., | ) ) | |
| Defendant/Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| VISION FINANCIAL GROUP, INC. | ) ) | |
| Third-Party Defendant. | ) | |

## ANSWER TO THIRD-PARTY COMPLAINT, CROSS CLAIM AND COUNTERCLAIM

Vision Financial Group, Inc. ("Vision"), through its undersigned counsel, sets forth its Answer to Third-Party Complaint, Cross-Claim and Counterclaim as follows:

## NATURE OF ACTION

### ALLEGATION:

1.　　This action arises out of a contractual agreement between Third-Party Defendant VISION FINANCIAL and IFC Credit Corporation for the sale of twelve (12) Royster Clark leases.  IFC Credit Corporation later sold the 12 leases to Defendant/Third-Party Plaintiff MLPI.  However, Third-Part Defendant VISION FINANCIAL continues to claim a right to the residual revenues of the twelve (12) Royster Clark leases.

### ANSWER:

Admitted. In further response, true and correct copies of the contractual agreement between Vision and IFC Credit Corporation ("IFC"), titled Sale of Lease, Rents, and Equipment Without

Recourse (the "Initial Assignment Agreement"), together with the twelve equipment schedules (the "Equipment Schedules"), which incorporate by reference the Initial Assignment Agreement are attached hereto collectively as Exhibit A.

**JURISDICTION AND VENUE**

**ALLEGATION:**

1.      Defendant/Third-Party Plaintiff is an Arizona corporation, with its principal place of business in Phoenix, Arizona.

**ANSWER:**

Admitted.

**ALLEGATION:**

2.      Upon information and belief, Third-Party Defendant VISION FINANCIAL is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania.

**ANSWER:**

Admitted.

**ALLEGATION:**

3.      Jurisdiction in this Court is proper under 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00 exclusive of interest and costs that may be heard by this Court.

**ANSWER:**

Admitted.

**ALLEGATION:**

4.      Venue in this action is proper pursuant to 28 U.S.C. §1391 (a) in that a substantial part of the property giving rise to this claim was and continues to be located in the State of Illinois.

**ANSWER:**

Admitted.

## COUNT I

**ALLEGATION:**

5.      VISION FINANCIAL entered into several equipment leasing contracts with Royster

Clark LLC pursuant to which VISION FINANCIAL purchased certain goods and leased those

goods to Royster Clark.

**ANSWER:**

Admitted.

**ALLEGATION:**

6.      VISION FINANCIAL transferred its interest in twelve (12) Royster Clark leases and the

related leased goods to IFC Credit.  Pursuant to that transaction, IFC Credit agreed that VISION

FINANCIAL was to receive a portion of the residual revenues realized from the Royster Clark

leases and the leased goods.

**ANSWER:**

Denied as stated. The Equipment Schedules speak for themselves. Under the clear and express

terms of the same, Vision specifically reserved an ownership interest in the residual proceeds of

each lease and each piece of leased equipment.

**ALLEGATION:**

7.      Subsequent to the transfer from VISION FINANCIAL to IFC Credit, IFC Credit sold and

assigned the same twelve (12) Royster Clark leases to MLPI, together with the underlying

equipment.

**ANSWER:**

Denied as Stated. It is admitted that IFC sold and assigned its interest in the leases and leased goods identified in the Equipment Schedules to Manufacturer's Lease Plans, Inc. ("MLPI"). The alleged sale and assignment of IFC's interest in the subject leases were conditioned upon and subject to the express terms of the Initial Assignment Agreement and Equipment Schedules between IFC and Vision.

**ALLEGATION:**

8.    The initial lease terms of the Royster Clark leases concluded in March 2007.  Since that time, Royster Clark has continued to lease the equipment under renewal terms.

**ANSWER:**

Admitted.

**ALLEGATION:**

9.    Subsequent to the commencement of the renewal terms, VISION FINANCIAL contacted Royster Clark and informed Royster Clark that VISION FINANCIAL was entitled to a portion of Royster Clark's residual revenues.

**ANSWER:**

Admitted.

**ALLEGATION:**

10.    VISION FINANCIAL also notified MLPI that it was entitled to a portion of the residual revenues realized from the leased goods, including rental payments by Royster Clark, as well as the proceeds of any ultimate sale or other disposition of the leased goods.

**ANSWER:**

Admitted.

**ALLEGATION:**

11.    MLPI belives VISION FIANCIAL'S total claims to be in an amount exceeding $75,000.00.    Specifically, VISION FINANCIAL claims that it is entitled to a share of the residual revenues to which IFC Credit makes claim in its complaint against MLPI.

**ANSWER:**

Admitted.

**ALLEGATION:**

12.    The amounts claimed by IFC Credit in its complaint against MLPI are therefore, subject to competing claims by VISION FINANCIAL.

**ANSWER:**

Admitted.

Wherefore, Vision requests this Honorable Court for the entry of an Order 1) declaring Vision's ownership interest reserved in the Initial Assignment Agreement and Equipment Schedules to be valid 2) compelling the turnover by MLPI to Vision of the residual proceeds of the leases received to date that are owned by Vision and 3) compelling MLPI to turn over all future residual proceeds owned by Vision within five business days of their receipt by MLPI, or for such other relief that the Court deems appropriate under the circumstances.

## COUNTERCLAIM

### VISION FINANCIAL GROUP, INC. V.
### MANUFACTURER'S LEASE PLANS, INC.

13.    The averments of MLPI's Third Party Complaint and the responses thereto of Vision are incorporated herein by reference as if set forth in their entirety.

14.    As set forth above, IFC sold and assigned the Initial Assignment Agreement and its interests in the Equipment Schedules to MLPI. As the Assignee of the Initial Assignment

Agreement, MLPI is subject to the same terms and conditions set forth thereunder as IFC, the original assignee.

15.     Under the terms of the Initial Assignment Agreement and Equipment Schedules, Vision retained an ownership interest in fifty percent of the residual proceeds of the leases after payment to IFC of a) its reasonable and customary costs of repossession and remarketing of the leased equipment, and b) 17% of the net residual proceeds.  (See Exhibit A attached hereto).

16.     The Initial Assignment Agreement provides for the recovery of the prevailing party's reasonable costs and expenses, including reasonable paralegal and attorneys', fees, and court costs incurred in enforcing the same.  (See Exhibit A, a copy attached hereto).

17.     As of the date hereof, despite demands by Vision for the turnover of the residual proceeds owned by Vision, MLPI has failed and refused to turnover the same.

18.     The Initial Assignment Agreement is a binding agreement between Vision and MLPI, the assignor of IFC.

## <u>COUNT I – BREACH OF CONTRACT</u>

20.     MLPI is in breach of the Initial Assignment Agreement due to its failure to turn over to Vision the residual proceeds owned by Vision.

21.     As a result of the breach, Vision has sustained damages in the approximate amount of $74,331.54 as a result of MLPI's failure to remit to Vision the residual proceeds owned by Vision, and will continue to incur further damages as additional residual proceeds owned by Vision are collected by MLPI.

22.     Vision has incurred attorney's fees and costs in connection with this action.

Wherefore, Vision requests this Court to enter judgment in its favor and against MLPI for 1) all residual proceeds of the leases owned by Vision and unjustly retained by MLPI; 2) all attorneys fees, paralegal fees and costs incurred by Vision and 3) declaratory relief in the nature of an order compelling the turnover of all future residual lease proceeds collected by MLPI and owing to Vision.

## CROSS CLAIM AGAINST IFC.

23    Vision incorporates by reference herein the averments set forth in MLPI's third party complain and paragraphs 1 through 22 of its Answer and Counterclaim as if set forth in their entirety.

24.    Despite demands for payment of the residual proceeds from IFC, IFC has failed and refused to turn over the same.

## COUNT I – BREACH OF CONTRACT

25.    The Initial Assignment Agreement is a binding agreement between Vision and IFC.

26.    IFC is in breach of the Initial Assignment Agreement due to its failure to pay Vision the residual proceeds owned by Vision.

27.    As a result of the breach, Vision has sustained damages in the amount of the residual proceeds owned by it in the approximate amount of 74,331.54, and will continue to incur further damages as additional residual proceeds owned by it are collected and not remitted to Vision.

28.    Vision has incurred attorney's fees and costs in connection with this action. Wherefore, Vision requests this Court to enter judgment in its favor and against IFC for 1) all

residual proceeds of the leases owned by Vision, 2) for all attorneys fees, paralegal fees and costs

incurred by Vision.


Respectfully submitted,

STOTIS & BAIRD                          KEEVICAN WEISS BAUERLE & HIRSCH LLC


By:  /S/_____              By:  /S/_____
Eric J. Parker                          Roger M. Bould
IL I.D. No. 6210726                     PA I.D. No. 55827
200 West Jackson Boulevard, Suite 1050  11th Floor Federated Investors Tower
Chicago, IL  60606                      1001 Liberty Avenue
(312) 461-1000                          Pittsburgh, PA  15222
                                        (412) 355-2600

*Local Counsel for Third-Party Defendant*   *Counsel for Third-Party Defendant*
*Vision Financial Group Inc.*               *Vision Financial Group Inc.*